**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


JACK CHEEK                                          CIVIL ACTION


VERSUS                                              NO. 06-10739


BARNES & NOBLE BOOKSELLERS, INC.                    SECTION "F"



ORDER AND REASONS

Before the Court is the defendant's motion for summary
judgment on the plaintiff's claims for relief under the Age
Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*,
and Louisiana's Employment Discrimination Law, La. Rev. Stat.
§ 23:311. For the reasons that follow, the defendant's motion for
summary judgment is GRANTED.

Background

In September 2001, Jack Cheek was hired by Barnes & Noble
Booksellers, Inc. to manage its store in Harvey. Barnes & Noble
fired Mr. Cheek in June 2005 based on information that he falsified
hundreds of customer "reservations" for Harry Potter books to
increase his store's inventory of the popular series. New

1

installments of Harry Potter are often scarce and in high demand, and Barnes & Noble allocates the books among its approximately 700 United States retail locations based in part on the number of customer reservations at each store. On December 21, 2004, Barnes & Noble notified all stores that they could begin taking customer reservations for the sixth installment of the series, "Harry Potter and the Half-Blood Prince," which was scheduled for release on July 16, 2005.[1]

According to Barnes & Noble, the plaintiff was fired because he inflated or fabricated hundreds of customer pre-reservations for Harry Potter books to increase his store's general inventory of what was certain to be a fast-selling item. Mr. Cheek's practices came to the attention of his Barnes & Noble district manager, Kip Craglow, and regional manager, Cheryl Phifer, when they discovered that the Harvey store submitted more customer reservations for Harry Potter VI than any other Barnes & Noble in the entire country. Denise Calcagno, who was the store manager of the Barnes & Noble in Metairie, was directed to investigate this matter as part of her training to eventually replace Mr. Craglow as district manager. In June 2005 Ms. Calcagno reported to Mr. Craglow that six of the plaintiff's subordinates at the Harvey store provided

---

[1] Barnes & Noble's reservation service allows customers to place advance orders for copies of Harry Potter books for in-store purchase on the release date simply by giving their name. Books that are reserved but not claimed are placed in the store's general inventory and ultimately sold from the shelves.

written statements that he had inflated Harry Potter book reservations and directed them to do the same, and that he confronted booksellers during the investigation and made them understand that their jobs might be in jeopardy, depending on how they dealt with Ms. Calcagno's questioning. Based on this information, Mr. Craglow discharged the plaintiff effective June 15, 2005.

Plaintiff submits, however, the practice of inflating Harry Potter reservations was implicitly condoned by Mr. Craglow. Further, he claims that his termination was carried out by Denise Calcagno, who had allegedly made age-discriminatory remarks to Mr. Cheek in the past. The plaintiff claims that Barnes & Noble's purported justification for his termination is, therefore, a pretext for age discrimination, and that his discharge violates the ADEA and Louisiana's Employment Discrimination Law.[2]

I.

Summary Judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[2] Because the prohibition against age discrimination under the Louisiana statute is the same as that of the federal statute, it is appropriate for the Court to evaluate the plaintiff's claims under federal case law. See e.g. Smolensky v. General Elec. Co., 2000 WL 341031 *3 (E.D. La. 2000), citing Barbe v. A. A. Harmon & Co., 705 So.2d 1210, 1215 (La. App. 4th Cir. 1998).

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of fact exists where the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of demonstrating an absence of evidence to support the non-movant's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the opposing party bears the burden of proof at trial, the moving party need not submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of opposing party's case. See Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991). To oppose a motion for summary judgment, the non-movant must set forth specific facts to establish a genuine issue of material fact, and cannot merely rest on allegations and denials. See Celotex, 477 U.S. at 324. Factual controversies are to be resolved in favor of the non-moving party. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

The evidentiary burdens of each party in an ADEA case are well-established. The plaintiff must first present a *prima facie* case of employment discrimination by showing that he was: (1) discharged; (2) qualified for the position; (3) in the protected class; and (4) that he was either (i) replaced by someone outside the protected class; (ii) replaced by someone younger; or (iii)

otherwise discharged because of age.  See <u>Bauer v. Albemarle Corp.</u>, 169 F.3d 962, 966 (5th Cir. 1999); <u>Armendariz v. Pinkerton Tobacco Co.</u>, 58 F.3d 144, 149 (5th Cir. 1995). If the plaintiff succeeds in establishing a *prima facie* case, the evidentiary burden shifts to the employer, who must then produce a legitimate, nondiscriminatory reason for the adverse employment decision. <u>Bauer</u>, 169 F.3d at 966. The ultimate burden of proof, however, rests with the plaintiff. <u>Id</u>. He must prove, through probative evidence, that the employer's articulated reasons for dismissal are merely a pretext for discriminatory purposes. <u>Id</u>. To establish pretext, the plaintiff can produce evidence as to the employer's discriminatory animus or as to the falsity of the employer's nondiscriminatory reason.

Cheek was fifty-eight when he was discharged and his position was filled by an employee outside of the protected class. The Court is also satisfied that Mr. Cheek was qualified to be a store manager, and, therefore, he has established the elements that define the *prima facie* case. Barnes & Noble has likewise satisfied its burden of articulating a nondiscriminatory reason for Mr. Cheek's termination: He systematically violated company policies and directed his employees to do the same.  The only dispute is whether Mr. Cheek can present sufficient evidence to create a genuine issue of material fact that Barnes & Noble's proffered reason for his termination is pretextual.

II.

The plaintiff seeks to establish pretext by presenting evidence that a younger employee was not fired for engaging in similar misconduct. In April 2003, when the plaintiff was on temporary medical leave, Monica Gutierrez, a thirty year-old department head at the Harvey store, submitted several hundred fictitious Harry Potter reservations under the names "Mickey Mouse" and "Donald Duck." When Mr. Cheek raised this matter with Kip Craglow, he allegedly was told: "don't worry about it, we'll sell the books."[3] Taken as true, that episode could equate with the disparate treatment of a younger employee, but it does not advance an inference of age discrimination; Ms. Gutierrez was not "similarly situated" to the plaintiff. See Wyvill v. United Companies Life Ins. Co., 212 F.3d 296, 302-303 (5th Cir. 2000), cert. denied, 531 U.S. 1145 (2001) (employees are "similarly situated" to plaintiff if they had substantially similar job duties, the same supervisors, engaged in "nearly identical" misconduct). Ms. Gutierrez reported to an assistant manager at the Harvey store, who in turn reported to Mr. Cheek himself; she

---

[3] The fact that Mr. Craglow said "don't worry" about an infraction by a mid-level employee that took place while the plaintiff was on leave for a triple by-pass heart surgery is not, as the plaintiff claims, tantamount to an official approval of falsifying Harry Potter reservations. Neither side has presented evidence as to what, if any, role the temporary store manager played in this incident and, moreover, the plaintiff acknowledges that it would have been his responsibility, not the district manager's, to discipline Ms. Gutierrez.

clearly did not have equal authority or responsibility with Mr. Cheek within Barnes & Noble. Furthermore, their misconduct was plainly not "nearly identical," because the plaintiff orchestrated and presided over a store-wide policy of falsifying book orders.

The plaintiff also draws attention to Denise Calcagno's role in his termination as evidence of pretext. In particular, Mr. Cheek says that she constantly questioned him about his plans for retirement during the four years they both worked as store managers. It is much more than a coincidence, the plaintiff submits, that he was fired only forty-five days after she began training to become his supervisor as district manager.

Age-context remarks certainly can qualify as sufficient evidence of age discrimination if they indicate an age-based animus and the speaker is principally responsible for the plaintiff's firing. Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir. 2002); see also Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996) (Wisdom, J.) (age remarks may serve as sufficient evidence of age discrimination if comments are (1) age related; (2) proximate in time to terminations; (3) made by individual(s) with authority over the employment decision at issue; and (4) related to the employment decision at issue). Even if Ms. Calcagno's alleged comments show discriminatory animus, the plaintiff has presented no evidence to support his suspicion that Ms. Calcagno was responsible for his firing. On the contrary, the declarations of Kip Craglow,

Cheryl Phifer, and Denise Calcagno provide overwhelming and unrebutted evidence that she was *not* responsible for the adverse employment action. Mr. Craglow states that he "maintained all authority for the investigation and remained the District Manager with full authority and responsibility for District 91 through the date of the Plaintiff's discharge. Ms. Calcagno remained subordinate to me throughout that time, and she did not make or have the authority to make the decision to discharge any Store Manager, including the Plaintiff." Mr. Craglow further states that "Ms. Calcagno never served as Plaintiff's supervisor, and at all times during Plaintiff's employment was equal to him in position, rank, and authority in the company"; rather, it was Mr. Craglow and the regional manager, Cheryl Phifer who made the decision to fire the plaintiff, and Ms. Calcagno's role "was limited to conducting parts of the investigation, reviewing the information gathered and the results thereof and communicating certain information to the Plaintiff at my direction."[4] Denise Calcagno and Cheryl Phifer provided the same information in their declarations, and the plaintiff has not presented any competent evidence to the

---

[4] Moreover, the fact that Cheryl Phifer (herself a member of the protected class under ADEA) had authority over the decision to both hire and fire the plaintiff gives rise to the "same actor" inference that age was not the motive behind his termination. <u>See Brown v. CSC Logic, Inc.</u>, 82 F.3d 651, 658 (5th Cir. 1996).

contrary.[5]

Barnes & Noble presents a legitimate and understandable reason for Mr. Cheek's termination, and Mr. Cheek cannot create a genuine issue of material fact as to pretext. Accordingly,

IT IS ORDERED that the defendant's motion for summary judgment is GRANTED, and the case is dismissed.

New Orleans, Louisiana, March 26, 2008.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[5] The plaintiff's unsupported speculation that Ms. Calcagno orchestrated his discharge is insufficient to create a genuine issue of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted) (to defeat a motion for summary judgment, the evidence must be significantly probative and not merely colorable). Further, the fact that Mr. Craglow allegedly remarked that he "just believed Denise" when it came to certain facts does not show she was involved in the firing decision. In his final meeting with Mr. Craglow, the plaintiff claimed that Ms. Calcagno once told him that, as far as she was concerned, it was okay to inflate book orders. She denied this remark, and Mr. Craglow "just believed Denise." Whether or not Ms. Calcagno condoned the plaintiff's conduct (and, consequently, whether or not Mr. Craglow believed her denial) is immaterial, because she never had authority to approve or disapprove of the plaintiff's management practices.

9